UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EDWARD OSWALT,              ) | |
|                 Plaintiff,         ) | |
| v.                          ) | CAUSE NO. 1:04-CV-00235 |
| JO ANNE B. BARNHART,        ) | |
| Commissioner of Social Security, ) | |
|                 Defendant.         ) | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying Plaintiff Edward Oswalt's application for Disability Insurance Benefits ("DIB").[1]

For the following reasons, the Commissioner's final decision will be REVERSED, and the case will be REMANDED for rehearing.

### II. FACTUAL AND PROCEDURAL BACKGROUND[2]

Oswalt was fifty-three years old when his DIB insured status expired on December 31, 1996. (Tr. 95.) He was a high school graduate and, after obtaining additional training in life insurance sales, worked as an insurance sales manager from 1963 to 1988. (Tr. 110, 140, 257.)

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

[2] The administrative record in this case is voluminous (281 pages), and the parties' disputes involve only small portions of it. Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

After his years in insurance sales, Oswalt was the sole proprietor of a flea market business through August 1997. (Tr. 105, 244.)

Oswalt filed his DIB application on September 10, 2001 (Tr. 99-102), alleging that he was disabled as of December 31, 1996, due to emphysema and chronic obstructive pulmonary disease (Tr. 104). The state agency denied his application initially and on reconsideration. (Tr. 20-21.) On July 31, 2002, Oswalt requested a hearing before an administrative law judge (ALJ) (Tr. 60); the hearing took place on October 15, 2002, before ALJ Yvonne Stam (Tr. 237-61).

At the hearing, the ALJ questioned Oswalt at length about the work activities that he performed in 1997, i.e., the time after his alleged disability arose and his DIB insured status expired. (Tr. 241-47.)  Oswalt testified that in 1997 he sold items at a local flea market every Friday from 9 a.m. to approximately 6 p.m., and every Saturday and Sunday from 9 a.m. to 5 p.m., until his business closed in August of that year. (Tr. 242, 244-45.) He maintained his booth at the flea market by himself on Fridays, but was assisted by his wife on the weekends. (Tr. 149, 244.)  In 1997, Oswalt did not independently set up his booth each day, but simply had to "go in and uncover the booth and set [sic] there and take care of customers." (Tr. 251.)  This was a significant departure from his responsibilities in the earlier years of his flea market business, when he maintained multiple locations, worked more days each week, set up and tore down booths each day, and lifted and transported merchandise. (Tr. 241, 250-51.)  Oswalt further testified that in 1997 he typically spent an additional day and a half each week acquiring, pricing and preparing merchandise for sale; however, Oswalt indicated that as his business began winding down, he spent more of this time selling wholesale to other dealers in order to reduce his inventory. (Tr. 148, 242-43.)  More than once in his testimony, Oswalt stated that he relied

2

on his wife's assistance to perform his flea market work activities in 1997. (Tr. 244, 245.)

Oswalt further testified that by 1997 his capacity for physical activity was limited. (Tr. 249-50, 253.) He could walk a few hundred yards in low humidity conditions, but only twenty to thirty feet in high humidity; he could lift heavier items, but could not carry them anywhere. (*Id*.) Oswalt experienced frequent shortness of breath and was uncomfortable standing more than twenty to thirty minutes at a time, but did manage activities well when sitting on a chair. (*Id*.) He also had difficulty sleeping at night due to severe feet and leg cramps, which led to frequent fatigue during the day. (*Id*.)

From a revenue standpoint, Oswalt's federal income tax returns indicated that he sold approximately $10,000 of merchandise in 1996 and $12,000 in 1997. (Tr. 75, 86.)  However, after deducting the cost of goods sold and other business expenses, Oswalt reported a business loss from his flea market sales for both years. (*Id*.)

On December 24, 2002, ALJ Stam denied Oswalt's application for DIB, finding that Oswalt was engaged in substantial gainful activity ("SGA") at the time he claimed to be disabled. (Tr. 41-45.) Oswalt requested review of the ALJ's initial decision, and on June 20, 2003, the Appeals Council remanded Oswalt's claim to the ALJ for further consideration of the impact of his business expenses on his self-employment work activity. (Tr. 33-36.) On January 28, 2004, Oswalt appeared with counsel and testified at a second hearing before ALJ Stam. (Tr. 268-81.) On February 26, 2004, ALJ Stam again denied Oswalt's DIB claim, reiterating her previous finding – that he had engaged in SGA during the period in which he claimed to be disabled. (Tr. 9-17.) On April 23, 2004, the Appeals Council denied Oswalt's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-6.) Oswalt then filed

the instant appeal in this Court. (Docket # 1.)

### III. STANDARD OF REVIEW

Section 405(g) of the Social Security Act ("Act") grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The ALJ's decision must be sustained if it is supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Id.*

Under this standard, the Court reviews the entire administrative record, but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

### IV. DISCUSSION

#### *A. Legal Framework*

Under the Social Security Act, a claimant seeking DIB must establish that he is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the

4

following issues, in sequence: (1) whether the claimant's work activity, if any, falls below the threshold of SGA; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] 20 C.F.R. § 404.1520; *see also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant on every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision and Oswalt's Arguments

In this case, the ALJ found that Oswalt's condition arose on December 31, 1996, the date that he last met the DIB insured status requirements of 42 U.S.C. § 423. *See Callaghan v. Shalala*, 992 F.2d 692, 695 (7th Cir. 1993) (stating that to be eligible for DIB, claimant must prove he was disabled as of or prior to the time his DIB insured status expires). The ALJ concluded, however, under step one of the five-step sequential evaluation process that Oswalt was not disabled as of December 31, 1996, because he had engaged in SGA by performing his work activities with the flea market business in 1997. (Tr. 12-17.) Therefore, Oswalt was not entitled to DIB. (*Id.*)

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC"), or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

5

Oswalt now requests that the Court overturn the ALJ's ruling, contending that the ALJ (1) improperly analyzed Oswalt's work history under the test for SGA, and (2) wrongly terminated her analysis of Oswalt's claim after step one of the five-step sequential evaluation process. (Pl.'s Reply to Def.'s Mem. in Supp. of the Commissioner's Decision at 3, 4.) For the reasons stated forthwith, the Court reverses the ALJ's decision and remands the case for rehearing.

### C. The ALJ's Determination that Oswalt Engaged in SGA Is Not Supported by Substantial Evidence

SGA is defined as "work that -- (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510; *see Jones v. Shalala*, 21 F.3d 191, 192 (7th Cir. 1994). The work activity of a claimant who is self-employed is evaluated differently than that of a claimant who is an employee; the activity of an employed claimant generally considers the claimant's earnings, while the evaluation of a self-employed claimant's work activities considers the value of the claimant's activities to the business, regardless of whether the claimant received immediate income for such activities. *See* 20 C.F.R. § 404.1574-1575. More specifically, in the case of a self-employed claimant the Commissioner considers three tests:

> (1) Test One: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. . . .
>
> (2) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

6

> (3) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) [$500 per month][4] when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575; *Keller v. Sullivan*, 928 F.2d 227, 232 (7th Cir. 1991). If a claimant is found not to have engaged in SGA under Test One, then the Commissioner will consider the claimant's activities under Test Two and Test Three. 20 C.F.R. § 404.1575. The Commissioner in this case concluded that Oswalt had engaged in SGA under Test Three.[5]

The Seventh Circuit has emphasized that a test of earnings in isolation is not necessarily determinative of SGA:

> [T]he income guidelines in the regulations create only a presumption, and they do not relieve an ALJ of the duty to develop the record fully and fairly. . . . A determination of substantial gainful activity is a broad-based inquiry which turns on a weighing of numerous factors. The receipt of substantial earnings may not be determinative of the issue of substantial gainful activity in several situations, such as where posted earnings do not represent pay for work . . . where work is detrimental to the claimant's health . . . and where work was performed under special conditions.

*Dugan v. Sullivan*, 957 F.2d 1384, 1390-91 (7th Cir. 1992); *see also Jones*, 21 F.3d at 192-93. Therefore, a claimant who depends upon special assistance to perform the work or who can only perform the work for brief periods of time may rebut a presumption of SGA based on earnings. *Id*.

---

[4]The relevant amount under 20 C.F.R. § 404.1574(b)(2) in 1997 was $500.

[5]The ALJ did not specifically articulate that she considered Test One and Test Two, although it can be reasonably inferred from her decision that Oswalt would not have been found to engage in SGA under either of these tests; therefore, she proceeded directly in her analysis to the most relevant test – Test Three. (Tr. 15, 43-44.)

## 1. Substantial Evidence Supports that Oswalt Worked
## Full-Time in his Flea Market Business in 1997

In her analysis, the ALJ determined that Oswalt spent approximately forty hours per week working in his flea market business: twenty-five hours operating the booth at the flea market, twelve hours looking for items to sell, and three hours pricing, packing and setting up merchandise. (Tr. 15.) Her determination was based on Oswalt's testimony:

> Q    Okay. So you only did the Friday, Saturday, Sunday flea market - -
>
> A    Right. . . .
>
> Q    Did you do anything to forward the flea market business during any of the other days of the week? Did you go out to acquire merchandise?
>
> A    Absolutely. . . .
>
> Q    Did [the flea market] have regular hours? . . .
>
> A    It was 9:00 to 9:00 on Friday and 9:00 until 5:00 on Saturday and Sunday.
>
> Q    And were you there during all the hours that the business was open?
>
> A    Well, actually on Fridays I'd usually leave earlier. I'd try to stay until about 6:00. . . .
>
> Q    Between all the different kinds of activities that you did in order to forward the flea market business when you weren't actually at the flea market on the weekends, how many days of the week were you spending *in addition to* those three days? How many days a week were you spending on average on working on all these other things?
>
> A    Well, like I say, I'd have to figure probably about a day-and-a-half.

(Tr. 242-43) (emphasis added).

Oswalt, however, contends that the ALJ erred when she determined that he worked forty hours per week in 1997; he asserts that he worked only twenty-five hours per week at the flea market, required his wife's assistance to perform the work, and did not spend any time looking

8

for items to sell or pricing, packing and setting up merchandise. (Pl.'s Reply to Def.'s Mem. in Supp. of the Commissioner's Decision at 3.)  Oswalt points to two pieces of evidence in the record to support his assertion: (1) his testimony (Tr. 241-42), and (2) his correspondence to the Appeals Council (Tr. 36, 236).

First, Oswalt vaguely contends that because he testified he was operating at only one local flea market on Fridays, Saturdays and Sundays in 1997, this testimony also shows he was not performing any work activities outside of the twenty-five hours at the flea market because he was trying to reduce his inventory in 1997.  To the contrary, however, Oswalt testified that in 1997 he worked approximately one and a half days per week performing a variety of tasks to support his flea market sales *plus* the three days spent at the actual flea market. Oswalt had ample opportunity at his second hearing to amend his prior testimony if it was inaccurate in any way, yet he did not do so. *See generally Collins v. Sullivan*, 729 F. Supp. 621, 624 (N.D. Ind. 1989) (emphasizing that claimant bears the burden at step one to present evidence on his own behalf); *accord Callaghan*, 992 F.2d at 695.  Therefore, Oswalt's first argument fails.

Oswalt further argues that the ALJ failed to consider, or give proper weight to, his correspondence to the Appeals Council in which he asserts he only worked twenty-five hours per week in 1997.  However, it is not this Court's function to "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3rd 995, 1001 (7th Cir. 2004).  In her decision, the ALJ specifically articulated her consideration of the evidence in the record and her reliance on Oswalt's testimony:

> In reaching this conclusion, the undersigned has carefully considered the determination made by the District Office of the Social Security Administration in

9

> Exhibit 2E.  The district office did not have the advantage of the entire record, including the claimant's hearing testimony, and apparently the claimant told the district office that he did not spend over 40 hours per month in the business, which may have been true in 1998 and 1999, but based on the hearing testimony was not true in 1997.

(Tr. 15.)  The ALJ did not err when she gave greater weight to Oswalt's testimony rather than other documents in the record, such as Oswalt's correspondence to the Appeals Council, to reach a conclusion regarding the number of hours that Oswalt worked in 1997.  *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (finding that an ALJ need not evaluate every piece of evidence in writing, but must sufficiently articulate the ALJ's assessment of the evidence to assure that the important evidence has been considered and that the ALJ's path of reasoning can be traced).  Therefore, Oswalt's second argument fails as well. (Tr. 15.)

Hence, the ALJ's determination that Oswalt worked the equivalent of a full-time work schedule in his flea market business in 1997 is supported by substantial evidence.[6]

## 2.  Substantial Evidence Does Not Support the Worth Applied to Oswalt's Work Hours by the ALJ

After determining that Oswalt worked forty hours per week in 1997, the ALJ applied a worth of $4.75 (the then-current minimum wage) to each of these hours and found that Oswalt had engaged in SGA "because, had the claimant performed such work tasks for a business for someone else, such work would have required an income of more than the substantial gainful activity guidelines . . . ." (Tr. 16.)  The Court finds the ALJ's reasoning flawed in this instance and unsupported by substantial evidence.

---

[6]While substantial evidence clearly supports that Oswalt worked thirty-seven hours per week in 1997, rather than the forty hours per week as determined by the ALJ, this variance of three hours would most likely not cause a change in the result under Test Three and would, therefore, be immaterial; nevertheless, the Court need not decide this point, as the case is ultimately remanded on other grounds to be discussed *infra.*

Oswalt testified that he required his wife's assistance to perform his work activities with the flea market business in 1997, specifically stating that she was physically present at the flea market on Saturdays and Sundays. He further testified that he was frequently fatigued, experienced shortness of breath, was unable to carry heavier items, and had difficulty with long periods of standing or walking.  The record does not describe, as the ALJ did not inquire, specifically *how much* assistance Oswalt required from his wife to perform his work activities, nor does it discuss how much of Oswalt's work may have been performed inefficiently because of his limited physical capacity.  Thus, the ALJ made a rather large leap in logic when she concluded that a business owner would have hired and paid Oswalt for all of his hours worked, when Oswalt would likely have required frequent rest breaks, altered responsibilities, and assistance from his wife to perform the work.  Likewise, one would even ponder further whether a business owner would have employed both Oswalt and his wife on Saturdays and Sundays and paid each of them minimum wage to perform the work actually accomplished, or perhaps whether the owner would have instead simply hired one efficient person and incurred half the cost. *See Peterson v. Chater*, 72 F.3d 675, 678 n.4 (8th Cir. 1995) (suggesting that the net loss the business was experiencing created doubt as to whether it would have paid a manager the wage applied by the ALJ).

Social Security Ruling (SSR) 83-34 states that to be considered SGA under Test Two or Test Three, evidence must "clearly demonstrate" that a claimant's work activity is "clearly worth" more than the amount shown for that particular calendar year in the SGA Earnings Guidelines. SSR 83-34 at 9.  In order to make this determination, SSR 83-34 requires that certain factors be examined in detail:

11

> To establish comparability of work activity, it is necessary to show that the disabled person is performing at a level comparable to that of unimpaired persons, considering the following factors: *hours, skills, energy output, efficiency, duties and responsibilities.* The lack of conclusive evidence as to the comparability of the required factors will result in a finding that work performed is not SGA . . . . Development must be specific. Each work factor cited above must be described in detail, showing its contribution to the business operation. General descriptions are considered inconclusive evidence for the point-by-point comparison that is required. *If only a general description is possible or available, any doubt as to the comparability of the factors should be resolved in favor of the impaired individual.* . . . It may be necessary to have a more comprehensive description of the impaired individual's activity than that which can be provided by the impaired person.

*Id.* (emphasis added).

Oswalt testified that his wife assisted him in his work activities and that he had various physical limitations in 1997. While the ALJ questioned Oswalt in detail regarding his working hours, she fell short of fully developing Oswalt's testimony to determine how his reduced energy, limited physical ability, and reliance on his wife's assistance may have impacted his work performance, and, thus, the value of his efforts. *See Dugan*, 957 F.2d at 1390 (emphasizing that an ALJ has a duty to develop the record fully and fairly). Nor did the ALJ question Oswalt's wife, who was present at both hearings, about Oswalt's ability to perform his work activities or the assistance that she provided to him in his work in 1997. (*See* Tr. 237-281.) Simply put, while the ALJ acknowledged in her opinion that Oswalt required some assistance, the ALJ failed to accumulate the necessary specific evidence that would *clearly demonstrate* that Oswalt's work activities were *clearly worth* more than $500, once Oswalt introduced into his testimony that his wife's assistance was necessary for him to perform his duties. Therefore, pursuant to SSR 83-34, any doubt or lack of conclusive evidence regarding the comparability of factors must be resolved in favor of Oswalt. (SSR 83-34 at 9.)

The Court recognizes that SSR 83-34's resolution of doubt in favor of the claimant seems innately at odds with a claimant's duty to carry the burden of proof of his disability at step one. Nevertheless, social security rulings are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b); *Lauer v. Apfel*, 169 F.3d 489 (7th Cir. 1999); *accord Downes v. Barnhart*, 289 F. Supp. 2d 1072, 1075 (S.D. Iowa 2003).  Once Oswalt disclosed in his testimony that he had physical limitations and required his wife's assistance to perform his work in 1997, the ALJ had a duty pursuant to SSR 83-34 to inquire in more detail about the relevant factors that would impact the valuation of Oswalt's work hours, in order to resolve any doubt that the evidence *clearly demonstrated* all of his work hours were *clearly worth* minimum wage.  While it is obvious that an employer could not legally pay an employee less than minimum wage, it is not so inherent that an employer would, first, actually employ an individual who has a reduced capacity to perform the work, and, second, pay that individual for as many hours as is necessary to accomplish the work, particularly in a business that operates at a net loss with annual gross sales in the range of $10,000 to $12,000. Rather, as deduced *supra*, it seems more logical that a business owner would hire the most efficient person who could accomplish the work in the least amount of time, leaving the less efficient individual unemployed. *See Jones*, 21 F.3d at 192 (acknowledging cases in which "although the disabled person is gainfully employed, the gainful employment is not substantial when viewed in terms of the purpose of the statute, because were it not for effort by himself or others far beyond the call of duty he would not be employed at all.").[7]

---

[7] It is possible that Oswalt's work activities may be found to be SGA under Test Three when considered "in terms of its value to the business," rather than "when compared to the salary an owner would pay to an employee for such duties in that business setting." 20 C.F.R. § 404.1575(a)(3).  *See, e.g., Johnson v. Sullivan*, 929 F.2d 596, 598 (11th Cir. 1991) (finding that claimant engaged in SGA because he, as a licensed land surveyor, was the key to the

Therefore, because substantial evidence does not support the ALJ's valuation of Oswalt's working hours and, thus, the conclusion that Oswalt engaged in SGA, the ALJ's decision is reversed, and the case is remanded for rehearing.[8]

## V.  CONCLUSION

In summary, the ALJ's finding that Oswalt engaged in SGA is not supported by substantial evidence.  Therefore, the Commissioner's final decision is hereby REVERSED, and the case is REMANDED for rehearing.

Enter for this 13th day of April, 2005.

S/Roger B. Cosbey

_____
Roger B. Cosbey,
United States Magistrate Judge

---

land surveying business being able to serve its customers); *Dierks v. Apfel*, 63 F. Supp. 2d 1028, 1032-34 (D. Neb. 1994) (determining that claimant's limited work activity as a licensed engineer was SGA when considered in terms of its value to his consulting and manufacturing businesses); *Barber v. Sullivan*, 765 F. Supp. 58, 62 (W.D.N.Y. 1991) (concluding that claimant engaged in SGA when considering the value of his work activity as a licensed insurance agent to his insurance business, even though his wife, who was not licensed, carried much of the business burden). However, this was not the analysis applied by the ALJ in her decision and, therefore, not the analysis the Court is examining in this opinion.

[8]Oswalt also contended that the ALJ erred because she did not analyze his claim under the remaining steps of the five-step sequential evaluation process as directed by the Appeals Council. (Pl's Reply to Def.'s Mem. in Supp. of the Commissioner's Decision at 4.) However, the Appeals Council ordered the ALJ to proceed with the sequential evaluation process only "in the event that the claimant is found to have not engaged in substantial activity." (Tr. 33.)  Since the ALJ found Oswalt had engaged in SGA, she did not err when she terminated her analysis after step one. However, as the case is now remanded for further rehearing regarding the determination of SGA, this issue is now moot.

14